## IN RE THE HONORABLE DONALD E. ANDERSON, JUDGE OF DISTRICT COURT.

252 N. W. 2d 592.

April 1, 1977—No. 47382.

*Sheldon D. Karlins,* for petitioner.

*Johnson, Fredin, Killen, Thibodeau & Seiler* and *Conrad M. Fredin,* for respondent.

Considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

These proceedings were instituted by the Board on Judicial Standards pursuant to Minn. St. 490.15 and 490.16 and the Rules of the Board to inquire into charges of judicial misconduct lodged against respondent, Judge Donald E. Anderson. The Board certified its findings of fact, conclusions of law, and recommendation for action to this court. Judge Anderson then petitioned for modification of the Board's recommendation. Briefs were filed, and by order of this court the matter was heard upon oral argument. We accept the Board's recommendation of suspension without pay for 3 months as the most appropriate sanction presently available for the instances of judicial misconduct found to have been committed.

The findings of fact made by the Board are not contested by Judge Anderson. They established that he is a judge of the district

court, sixth judicial district, serving by election to a term commencing in 1967, and by subsequent reelection.

In February 1973 the Board received complaints relating to alleged failures of Judge Anderson to dispose of and file decisions in a manner and within the time specified in Minn. St. 546.27.[1] By letter dated February 12, 1973, the Board notified Judge Anderson that it had received these complaints, and requested a list of all matters currently pending before him.

By letter dated February 23, 1973, addressed to the court administrator of the supreme court, respondent replied to the request of the Board, stating:

"During the past week I was able to get out all of the orders that I am aware of that are over ninety days over (sic)."

In that letter respondent asked that he be informed of

"other pending orders outstanding that may have come to your attention."

On February 23, 1973, the date of respondent's letter, a number of matters had been submitted to him for decision, which matters had not been decided within 90 days.

After hearing further complaints, the Board, on its own motion, undertook an inquiry and preliminary investigation as to whether or not in the conduct of his office as judge of the district court respondent was guilty of persistent failure to perform his duties, habitual intemperance, or conduct prejudicial to the administration of justice bringing the judicial office into disrepute. On December 22, 1975, the Board served written notice upon respondent of the nature of the charges which were made

---

[1] Minn. St. 546.27 provides in part:

"* * * All questions of fact and law, and all motions and matters submitted to a judge for his decision, shall be disposed of and his decision filed with the clerk within 90 days after such submission, unless sickness or casualty shall prevent, or the time be extended by written consent of the parties. No part of the salary of any judge shall be paid unless the voucher therefor be accompanied by a certificate of the judge that he has fully complied with the requirements of this section."

against him and afforded him a reasonable opportunity to present personally, in writing or orally, such matters as he chose for consideration by the Board explaining, refuting, or admitting the alleged misconduct. Respondent made no response to such written notice and the Board concluded that the present formal proceedings should be instituted. These proceedings culminated in our present consideration of the Board's findings of judicial misconduct.

Most significantly, the Board found that in 1973 or an earlier year respondent, by telephone or personal contact, approached Alfred Weinberg and Edward Litman, each of whom was an attorney at law engaged in the private practice of law in the same district in which respondent served as judge, and borrowed $1,000 from each of the two lawyers. No written evidence of these loans was given by respondent to the respective attorneys until after the present proceedings were commenced. While respondent repaid the loans, with interest, out of his savings sometime in May 1976, he was indebted to Messrs. Weinberg and Litman in the amount of $1,000 during a period when they appeared before him as counsel in contested litigation. Respondent testified that at the time he repaid the $2,000 he had no trouble raising the funds for the repayment because at that time he had the money on deposit in a savings account. Respondent took the view that the loans were "on demand." The lenders never demanded repayment. The Board felt that such a situation might have gone on for a number of years if the formal proceedings had not been initiated.

The Board also found that at the commencement of these proceedings, Judge Anderson had pending before him 12 matters which had been submitted for decision more than 90 days previously. The oldest matter was taken under advisement on November 5, 1969. Judge Anderson admitted in his answer that he had failed to dispose of these cases within the required time. By way of defense, Anderson alleged that his failure was occasioned by "a mental sickness of a nature which has impaired

his judicial effectiveness." The Referee and the Board specifically found that the evidence did not support this contention. This conclusion was based principally upon Anderson's own testimony regarding each individual case and the reasons he advanced for the failure to promptly decide the matter.

Also during this period Judge Anderson continued to certify his compliance with Minn. St. 546.27 by endorsement of his pay vouchers from the state. Additionally, he failed to comply with certain informational requests submitted to him by the state court administrator. Also, in two cases he entered contradictory orders, which were subsequently corrected.

The Board found that since May 17, 1976, respondent had kept a log of all matters heard or tried before him. The log reflected that all matters heard by respondent from May 17, 1976, to the end of the proceedings before the Board were the subject of prompt disposition.

Finally, the Board found that while Judge Anderson was under medical care for an emotional problem both before and during these proceedings, he had not in the past suffered, nor was he presently suffering, from any disability within the definition of Minn. St. 490.16, subd. 3, i. e.,

"disability that seriously interferes with the performance of his duties and is or is likely to become permanent * * *."

It appears additionally that Judge Anderson has been able to resolve his emotional difficulties.

The Board concluded that Judge Anderson had consistently failed to perform his duties and had engaged in conduct prejudicial to the administration of justice, bringing the judicial office into disrepute, within the purview of Minn. St. 490.16. It recommended that Judge Anderson be publicly censured and suspended without pay for 3 months or, in the alternative, that he be removed from office.[2]

---

[2] Initially, the Board recommended only suspension and censure. In Judge Anderson's petition for modification, he specifically questioned the authority of the court to suspend a judge in proceedings such as

The conduct of respondent which is the subject of scrutiny in these proceedings is judicial conduct of a most serious nature. The loans between Judge Anderson and members of the bar in direct contravention of Canon 5C(4) of the Code of Judicial Conduct deserve severe and explicit censure. The failure to file the requested informational reports constitutes a violation of Canon 3B(1) as well as the statutory requirement of Minn. St. 480.17. The failure to promptly decide matters submitted violates Canon 3A(5) and Minn. St. 546.27. Conceding the facts as found, Judge Anderson urges that we are not empowered by statute to impose the sanction of suspension proposed by the Board but must either censure or remove him. Of these two alternatives, he contends that only censure is warranted upon the facts.

Minn. Const. art. 6, § 9, vests in the legislature the power to provide for the removal or discipline of all judges:

"The legislature may provide by law for retirement of all judges and for the extension of the term of any judge who becomes eligible for retirement within three years after expiration of the term for which he is selected. The legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice."

Exercising that power, the legislature has enacted Minn. St. 490.15, which creates the Board on Judicial Standards, and Minn. St. 490.16, which defines its powers. The latter statute provides in subd. 3:

"On recommendation of the board on judicial standards, the supreme court may retire a judge for disability that seriously interferes with the performance of his duties and is or is likely to become permanent, and censure or remove a judge for action or inaction occurring not more than four years prior to such ac-

---

these. Thereafter, the Board filed an alternate recommendation for removal in the event it was determined the suspension was not an available sanction.

tion being reported to the board on judicial standards that may constitute persistent failure to perform his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

A literal reading of the statute supports Judge Anderson's position. However, keeping in mind the broad language of the constitutional authorization for this legislation, and considering the objective sought by the legislature of providing a plenary system of judicial discipline which is capable of dealing appropriately with all cases that might arise in any varied factual context, we feel that the grant of absolute power to remove from office implicitly gives us the power to impose lesser sanctions short of removal, in the absence of specific indication to the contrary by the legislature.

Suspension is an acceptable sanction in this case and at this time. Removal, the more severe disposition, would preclude Judge Anderson from ever again holding judicial office. See, Minn. St. 490.16, subd. 4. The fact that suspension shifts additional work to other judges is a problem which should be considered when the present law is next reviewed by the legislature.

For these reasons we have concluded that we are justified in accepting the Board's recommendation of suspension without pay. In so deciding, we are not unmindful of the prohibition of Minn. Const. art. 6, § 5, which provides that the compensation of judges prescribed by the legislature shall not be diminished during their term of office. Nothing we do in any way affects the amount of compensation prescribed for the office of district court judge; we hold only that for the period of time Judge Anderson is suspended from office he is not entitled to receive the emoluments of that office. The office of district court judge is constitutionally created, as is the manner in which compensation of such judges is determined. Of equal constitutional stature is the authority of the legislature to provide for the discipline of those judges, which includes the power of suspension without pay. The legislature itself recognized this when it provided for

suspension without pay pending the final resolution of criminal charges brought against any judge. See, Minn. St. 490.16, subd. 2.

It is therefore ordered that, effective April 1, 1977, and for a period of 3 calendar months thereafter, Judge Donald E. Anderson be suspended from office. He shall not be entitled to receive any salary of that office during such period of suspension. He is hereby censured for the judicial misconduct detailed in the opinion.

Suspension without pay for 3 months.